UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

FABIO ENRIQUE DIAZ GARCIA,

Plaintiff,

-against-

PARK AVENUE AESTHETIC & REJUVENATION DENTISTRY, P.C., and DR. GERALD P. CURATOLA, D.D.S., individually,

Defendants.

-----------------------------------------------------------X

Civil Action No. ____________

**COMPLAINT**

Action under the Fair Labor Standards Act, 29 U.S.C. § 216(b), the New York Labor Law, and New York common law

**JURY TRIAL DEMANDED**

Plaintiff FABIO ENRIQUE DIAZ GARCIA, by his attorneys, Stillman Legal, P.C., as and for his Complaint against Defendants PARK AVENUE AESTHETIC & REJUVENATION DENTISTRY, P.C. (the "Corporate Defendant") and DR. GERALD P. CURATOLA, D.D.S., individually (together, "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1. This is an action to recover unpaid and untimely paid wages, liquidated damages, statutory damages, interest, attorneys' fees, and costs under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq., and Article 6 of the New York Labor Law.

2. Plaintiff Fabio Enrique Diaz Garcia is a porter. The Corporate Defendant is a New York professional service corporation that operates a dental and aesthetic practice at 860 Fifth Avenue in Manhattan, where Plaintiff has worked since November 2023. Defendant Dr. Gerald P. Curatola, D.D.S., is the Corporate Defendant's chief executive officer and principal.

3. The Corporate Defendant hired Plaintiff on or about November 16, 2023, and Defendants agreed to pay him a wage of $1,000.00 per week, an amount Defendants also roughly described to Plaintiff as $4,000.00 per month.

4. Defendants then paid Plaintiff nothing at all for approximately the first seven weeks of his employment. Plaintiff worked a full schedule throughout that period and received no wages on any payday. Defendants discharged the arrearage only on December 28, 2023 and January 3, 2024, when they paid Plaintiff a total of $7,000.00 by two checks drawn outside of payroll, without tax withholding and without any wage statement.

5. The Fair Labor Standards Act requires an employer to pay the federal minimum wage for each workweek on the regular payday for that workweek. Wages not paid when due are unpaid wages, and later payment does not cure the violation. By paying Plaintiff no wages at all on any payday for approximately seven weeks, Defendants failed to pay Plaintiff the minimum wage required by 29 U.S.C. § 206 for each of those workweeks.

6. Beginning with the pay period commencing March 1, 2024, Defendants unilaterally cut Plaintiff's compensation by more than half, from $3,750.00 to $1,500.00 in gross wages per pay period, without Plaintiff's agreement and without lawful notice. Plaintiff did not consent to the reduction; he continued working because he could not afford to lose his job. Defendants have paid Plaintiff at the reduced rate ever since.

7. Defendants have also never paid Plaintiff on a weekly basis, as Article 6 of the New York Labor Law requires for manual workers. They paid him semi-monthly, then bi-weekly, and for approximately the first seven weeks of his employment they did not pay him on any regular payday at all.

8. Finally, the wage statements Defendants furnished with each payment of wages omitted information that the New York Labor Law requires, including Plaintiff's rate of pay and the number of hours he worked.

## PARTIES

***Plaintiff***

9. Plaintiff Fabio Enrique Diaz Garcia is a natural person who resides in Queens County, New York. Plaintiff’s primary language is Spanish.

10. At all times relevant to this Complaint, Plaintiff was an "employee" of Defendants within the meaning of New York Labor Law § 190(2).

11. At all times relevant to this Complaint, Plaintiff was a "manual worker" within the meaning of New York Labor Law § 190(4). Defendants' own payroll records identify Plaintiff's position as "Porter." Plaintiff's duties were manual in nature and required no exercise of independent judgment or discretion, and Plaintiff spent more than twenty-five percent of his working time engaged in physical labor.

12. Plaintiff was not exempt from the overtime compensation requirements established by the Commissioner of Labor's minimum wage orders or otherwise provided by New York law or regulation, and was not exempt from the minimum wage or overtime provisions of the Fair Labor Standards Act.

13. At all times relevant to this Complaint, Plaintiff was an "employee" engaged in commerce or in the production of goods for commerce, and an employee handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce, within the meaning of 29 U.S.C. §§ 203(e) and 206(a). In performing his duties as a porter, Plaintiff regularly handled cleaning supplies, equipment, paper goods, and other materials that had moved in interstate commerce.

***The Corporate Defendant***

14. The Corporate Defendant, Park Avenue Aesthetic & Rejuvenation Dentistry, P.C., is a domestic professional service corporation organized under the laws of the State of New York on October 24, 2005, bearing New York Department of State identification number 3272203, with its principal office in New York County and an address for service of process at 860 Fifth Avenue, Suite 1HJ, New York, New York 10065.

15. The Corporate Defendant operates a dental and aesthetic practice at 860 Fifth Avenue, New York, New York 10065, and does business under the names "Park Avenue Aesthetic & Rejuvenation Dentistry," "Park Avenue Aesthetic & Rejuve," and "Rejuvenation Dentistry."

16. At all times relevant to this Complaint, the Corporate Defendant was an "employer" of Plaintiff within the meaning of New York Labor Law § 190(3) and of 29 U.S.C. § 203(d). The

Corporate Defendant hired Plaintiff, assigned and supervised his work, set and changed his rate of pay, determined when and how often he was paid, issued the checks and direct deposits by which he was paid, and maintained his employment and payroll records.

17. At all times relevant to this Complaint, the Corporate Defendant was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1)(A). The Corporate Defendant had employees engaged in commerce or in the production of goods for commerce, and employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce. Upon information and belief, the Corporate Defendant's annual gross volume of sales made or business done was not less than $500,000.00 in each year of Plaintiff's employment. The Corporate Defendant operates an established dental and aesthetic practice on Fifth Avenue in Manhattan, has been in continuous operation since 2005, employs multiple licensed practitioners and support staff, and administers its payroll through national payroll service providers.

***Defendant Curatola***

18. Defendant Dr. Gerald P. Curatola, D.D.S., is a natural person and a licensed dentist. He is the chief executive officer and principal of the Corporate Defendant. The Corporate Defendant's filings with the New York Department of State identify him as its chief executive officer and designate him, at 860 Fifth Avenue, Suite 1HJ, New York, New York 10065, as the person to whom process against the Corporate Defendant is to be mailed.

19. Defendant Curatola practices at the Corporate Defendant's premises. His registration in the National Plan and Provider Enumeration System lists the same business telephone number, 212-355-4777, that appears on every wage statement the Corporate Defendant furnished to Plaintiff.

20. Upon information and belief, Defendant Curatola possesses and exercises operational control over the Corporate Defendant. He has the power to hire and to fire its employees, to control and set their work schedules and the conditions of their employment, to determine the rate and method of their compensation, and to cause their employment and payroll records to be made and kept. Upon information and belief, the decision to reduce Plaintiff's compensation effective March 1, 2024 was made or approved by Defendant Curatola. Plaintiff

observed Defendant Curatola at the Corporate Defendant's premises directing the operations of the practice, and Plaintiff's work assignments and conditions of employment were set by or under Defendant Curatola's authority.

21. These allegations rest on the following: the Corporate Defendant is a professional service corporation operating from a single place of business; Defendant Curatola is the only principal identified in its public filings; he is designated there both as its chief executive officer and as its agent for the receipt of process; and his own professional registration carries the practice's business telephone number. Upon information and belief, compensation decisions at a practice of this size are made or approved by its principal. The records that will establish the scope of Defendant Curatola's authority — among them the signature authorizations on the accounts from which Plaintiff was paid and the administrator records of the Corporate Defendant's payroll providers — are in Defendants' possession and control.

22. At all times relevant to this Complaint, Defendant Curatola was an "employer" of Plaintiff within the meaning of New York Labor Law § 190(3) and of 29 U.S.C. § 203(d), and is jointly and severally liable with the Corporate Defendant for the violations alleged in this Complaint.

**JURISDICTION AND VENUE**

23. This Court has subject matter jurisdiction over Plaintiff's federal claim under 28 U.S.C. § 1331, 28 U.S.C. § 1337, and 29 U.S.C. § 216(b).

24. This Court has supplemental jurisdiction over Plaintiff's New York Labor Law and common law contract claims under 28 U.S.C. § 1367(a), because those claims arise from the same employment relationship and the same course of conduct as the federal claim and form part of the same case or controversy.

25. Venue is proper in this District under 28 U.S.C. § 1391(b)(1), because the Corporate Defendant resides in this District, and under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to Plaintiff's claims occurred in this District. The Corporate Defendant's place of business is 860 Fifth Avenue, New York, New York, where Plaintiff performed all of his work.

## FACTUAL ALLEGATIONS

### *A. Plaintiff's Hiring and the Agreed Terms of His Compensation*

26. On or about November 16, 2023, Plaintiff signed a written agreement with the Corporate Defendant and began working for Defendants as a porter at the 860 Fifth Avenue premises.

27. Defendants agreed to pay Plaintiff a wage of $1,000.00 per week. Defendants also described the compensation to Plaintiff as approximately $4,000.00 per month, a rough approximation of the agreed weekly rate.

28. Plaintiff's regular schedule was forty hours per week. Defendants' own payroll records record Plaintiff as working eighty hours in each two-week pay period, which is forty hours per week. Plaintiff worked that schedule from the beginning of his employment on November 16, 2023 through at least the date of this Complaint.

29. Plaintiff performed all of the work Defendants assigned to him.

### *B. Defendants Paid Plaintiff Nothing for Approximately Seven Weeks*

30. From November 16, 2023 through late December 2023, Defendants paid Plaintiff no wages whatsoever. Defendants did not issue Plaintiff a paycheck on any payday during that period.

31. On or about December 28, 2023, Defendants paid Plaintiff $2,000.00. The payment was made by a check drawn on Defendants' Chase checking account, identified on Defendants' payment record as check number 136534, and Defendants' own record of that payment identifies Plaintiff's position as "Porter."

32. On or about January 3, 2024, Defendants paid Plaintiff a further $5,000.00.

33. Those two payments, totaling $7,000.00, were the only compensation Plaintiff received for the first approximately seven weeks of his employment. They were made without any payroll withholding and without any wage statement.

34. The $7,000.00 Defendants paid on December 28, 2023 and January 3, 2024 corresponds to seven weeks of wages at the agreed rate of $1,000.00 per week.

***C. Defendants Placed Plaintiff on Payroll and Then Cut His Pay by More Than Half***

35. Defendants first placed Plaintiff on a formal payroll in February 2024, processed through ADP under the employer name “Park Avenue Aesthetic & Rejuve” at 860 Fifth Avenue, New York, New York 10065.

36. For the pay period February 1 through February 15, 2024, Defendants paid Plaintiff $3,750.00 in gross wages, with a net payment of $2,642.52, by check number 12210 dated February 22, 2024.

37. For the pay period February 16 through February 29, 2024, Defendants again paid Plaintiff $3,750.00 in gross wages, with a net payment of $2,642.53.

38. Beginning with the pay period commencing March 1, 2024, Defendants reduced Plaintiff's gross pay from $3,750.00 to $1,500.00 per pay period, a reduction of sixty percent and an amount that, on a weekly basis, falls substantially below the agreed rate of $1,000.00 per week. For the pay period March 1 through March 15, 2024, Defendants paid Plaintiff $1,500.00 in gross wages, with a net payment of $1,179.33, by check number 1009 dated March 15, 2024.

39. Defendants did not obtain Plaintiff's agreement to the reduction. Defendants did not provide Plaintiff with written notice of the reduction seven calendar days before it took effect, or at any time before it took effect.

40. Defendants told Plaintiff that compensation he had already earned and received constituted an overpayment. That characterization was false. The amounts Defendants had paid Plaintiff were wages Plaintiff had earned at the rate Defendants themselves knowingly set and approved for the February 2024 pay periods, and were not overpayments resulting from any mathematical or clerical error. Defendants, not Plaintiff, determined the gross wage figure that appeared on each pay stub, reviewed and authorized those payroll submissions before payment issued, and Plaintiff was entitled to rely on those amounts as the wages Defendants agreed to pay.

41. Plaintiff objected to the reduction and did not accept it. Plaintiff continued to work for Defendants because he reasonably feared that he would lose his job if he refused, and because he could not, as a practical matter, immediately secure comparable employment. Plaintiff communicated his objection to Defendants, who disregarded it.

42. Defendants have continued to pay Plaintiff $1,500.00 in gross wages per pay period from March 1, 2024 to the present, including after they transferred payroll administration to a professional employer organization in or about mid-2025. The transfer of payroll administration did not alter Defendants' control over Plaintiff's employment or their status as his employer. Defendants have never restored Plaintiff to the agreed rate of $1,000.00 per week, and have never paid Plaintiff the difference between the agreed rate and the reduced rate.

43. The difference between the wages Defendants agreed to pay Plaintiff and the wages Defendants have in fact paid him since March 1, 2024 constitutes earned and unpaid wages, in an amount to be determined at trial.

***D. Defendants Have Never Paid Plaintiff Weekly***

44. Plaintiff is a manual worker. Defendants were therefore required to pay Plaintiff weekly, and not later than seven calendar days after the end of the week in which the wages were earned.

45. Defendants have never paid Plaintiff weekly. For approximately the first seven weeks of Plaintiff's employment, Defendants paid Plaintiff on no regular payday at all. From February 2024, Defendants paid Plaintiff semi-monthly, on pay dates that included February 22, February 29, March 15, March 29, April 17, April 30, May 15, June 5, June 21, July 3, July 15, July 31, August 15, August 30, and September 13, 2024. From late September 2024 onward Defendants paid Plaintiff every two weeks.

46. Upon information and belief, Defendants have not been authorized by the Commissioner of Labor to pay manual workers less frequently than weekly, and the Corporate Defendant is not a nonprofit organization.

47. As a result of Defendants' failure to pay Plaintiff weekly, Plaintiff was temporarily deprived of the use of his wages, and lost the time value of those wages, for the periods during which they were withheld.

***E. Defendants' Wage Statements and Wage Notice***

48. Defendants did not furnish Plaintiff with any wage statement for the wages they paid him on December 28, 2023 and January 3, 2024.

49. The wage statements Defendants furnished to Plaintiff beginning in February 2024 were not accurate and did not contain the information New York Labor Law § 195(3) requires. Those statements state Plaintiff's rate of pay as "0.00" and the hours he worked as "0.00." They do not state Plaintiff's regular hourly rate of pay, his overtime rate of pay, the number of regular hours he worked, or the number of overtime hours he worked, although Plaintiff was not exempt from overtime compensation. Plaintiff in fact worked forty hours in each week of each of those pay periods.

50. Upon information and belief, Defendants never provided Plaintiff with the written notice required by New York Labor Law § 195(1)(a) at the time of his hiring or at any time thereafter. No such notice appears among the employment and payroll records Defendants furnished to Plaintiff and that Plaintiff has retained, and Defendants' own payroll records reflect no rate of pay for Plaintiff.

51. Defendants' failure to provide Plaintiff with a compliant wage notice and accurate wage statements caused Plaintiff concrete financial injury beyond the statutory violations themselves.

52. Because Defendants never gave Plaintiff written notice of his rate of pay and regular payday, and because the wage statements Defendants furnished stated his rate of pay as "0.00" and his hours as "0.00," Plaintiff had no document from Defendants against which to measure what he was being paid. He could not determine from Defendants' own records what hourly rate Defendants were applying to his work, how many hours Defendants were crediting him, when he was entitled to be paid, or whether any given payment was correct.

53. As a direct result, Plaintiff was unable to verify the rate and hours Defendants were applying to his pay, unable to calculate the precise amount he was owed, and unable to make a timely and specific demand for the difference. Defendants' underpayment of his wages consequently continued, uncorrected, for more than two years. Had Defendants furnished the notice and statements the law requires, Plaintiff would have been able to calculate the discrepancy between the wage Defendants agreed to pay him and the wage Defendants were in fact paying him, and would have sought payment of the difference at the time.

### *F. Defendants' Violations Were Willful*

54. The Corporate Defendant is a professional corporation that has operated continuously since 2005. It employs multiple licensed practitioners and support staff and administers its payroll through national payroll service providers, first ADP and later a professional employer organization. Defendant Curatola has been its chief executive officer throughout.

55. Defendants therefore knew how to place an employee on a compliant payroll, withhold taxes, issue wage statements, and pay on a regular payday. They did all of those things for Plaintiff beginning in February 2024.

56. For approximately the first seven weeks of Plaintiff's employment, Defendants did none of them. They kept Plaintiff off their payroll entirely, paid him nothing on any payday, and then discharged the arrearage with two checks that carried no tax withholding and no wage statement. That was not an administrative oversight of a single pay period; it was a sustained practice of paying a full-time employee outside the payroll system.

57. Defendants' failure to pay Plaintiff the minimum wage when due was willful within the meaning of 29 U.S.C. § 255(a). Defendants knew that their conduct was prohibited by the Fair Labor Standards Act, or at a minimum showed reckless disregard for whether their conduct was prohibited.

58. Defendants' violations of the New York Labor Law described in this Complaint were likewise willful. Defendants employed national payroll service providers capable of configuring compliant pay frequencies, wage statements, and wage notices, yet chose to pay

Plaintiff outside of payroll entirely for the first seven weeks of his employment, and thereafter furnished wage statements listing his rate and hours as "0.00." Defendants had no good faith basis to believe that their underpayment of Plaintiff's wages complied with the law.

## FIRST CAUSE OF ACTION

(Failure to Pay Minimum Wages When Due — Fair Labor Standards Act, 29 U.S.C. §§ 206, 216(b))

59. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

60. At all times relevant to this Complaint, Plaintiff was an employee covered by the Fair Labor Standards Act and Defendants were his employer within the meaning of 29 U.S.C. § 203(d).

61. The Fair Labor Standards Act requires an employer to pay each covered employee not less than the federal minimum wage for all hours worked in each workweek, and requires that those wages be paid on the regular payday for the period in which the workweek ends. Wages that are not paid when due are unpaid wages for purposes of 29 U.S.C. § 206, and an employer's later payment of the amounts due does not cure the violation or extinguish the employee's remedy.

62. From November 16, 2023 through December 28, 2023, Plaintiff worked a full schedule for Defendants and Defendants paid him no wages on any payday. Plaintiff worked approximately forty hours in each of the approximately seven workweeks in that period, or approximately 280 hours in total. At the federal minimum wage of $7.25 per hour, Defendants were required to pay Plaintiff not less than $2,030.00 for those workweeks, and were required to pay the wages earned in each workweek on the regular payday for the period in which that workweek ended. Defendants paid Plaintiff nothing. Defendants thereby failed to pay Plaintiff the minimum wage required by 29 U.S.C. § 206(a) for each workweek in that period.

63. Defendants did not pay those wages until December 28, 2023 and January 3, 2024, weeks after they were due.

64. Defendants' violations were willful within the meaning of 29 U.S.C. § 255(a), for the reasons alleged above.

65. Defendants cannot show that they acted in good faith and on reasonable grounds to believe that their failure to pay Plaintiff on any payday for approximately seven weeks complied with the Fair Labor Standards Act.

66. By reason of the foregoing, Plaintiff is entitled under 29 U.S.C. § 216(b) to recover any minimum wages that remain unpaid, an additional equal amount as liquidated damages for the minimum wages Defendants failed to pay when due, and reasonable attorneys' fees and costs.

**SECOND CAUSE OF ACTION**

(Failure to Pay Earned Wages — New York Labor Law § 191; N.Y. Lab. Law § 198)

67. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

68. New York Labor Law § 191(1)(a) requires an employer to pay a manual worker the wages he has earned.

69. Defendants agreed to pay Plaintiff $1,000.00 per week. From March 1, 2024 to the present, Defendants have paid Plaintiff substantially less than that amount.

70. Defendants' unilateral reduction of Plaintiff's compensation was not agreed to by Plaintiff and was not preceded by the written notice New York Labor Law § 195(2) requires. The wages Defendants have withheld from Plaintiff since March 1, 2024 remain earned, due, and unpaid.

71. By reason of the foregoing, Plaintiff is entitled under New York Labor Law § 198(1-a) and § 198(3) to recover his unpaid wages in an amount to be determined at trial, liquidated damages as provided by law for willful violations, prejudgment and post-judgment interest, and reasonable attorneys' fees and costs.

**THIRD CAUSE OF ACTION**

(Failure to Pay Wages Weekly — New York Labor Law § 191(1)(a); N.Y. Lab. Law § 198)

72. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

73. New York Labor Law § 191(1)(a) requires that a manual worker be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned.

74. Defendants paid Plaintiff no wages at all on any regular payday from November 16, 2023 until December 28, 2023, and did not pay the full arrearage of $7,000.00 until January 3, 2024. During that period, Defendants did not pay Plaintiff on a regular payday, and did not pay him even semi-monthly.

75. Thereafter, Defendants paid Plaintiff semi-monthly and then bi-weekly, rather than weekly, through the present.

76. By reason of the foregoing, Plaintiff is entitled under New York Labor Law § 198(1-a) to recover liquidated damages equal to one hundred percent of the wages Defendants failed to pay on a regular payday no less frequently than semi-monthly; as to wages Defendants did pay on a regular payday but paid late, damages of up to one hundred percent of the lost interest due for the delayed payment, calculated using a daily interest rate for each day the payment was late based on the annual rate of interest then in effect as prescribed by the Superintendent of Financial Services pursuant to section 14-a of the Banking Law; prejudgment and post-judgment interest; and reasonable attorneys' fees and costs.

## FOURTH CAUSE OF ACTION

(Failure to Furnish Accurate Wage Statements — New York Labor Law § 195(3); N.Y. Lab. Law § 198(1-d))

77. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

78. New York Labor Law § 195(3) requires an employer to furnish each employee, with every payment of wages, a statement listing, among other things, the rate or rates of pay and

the basis thereof, and, for an employee who is not exempt from overtime compensation, the regular hourly rate or rates of pay, the overtime rate or rates of pay, the number of regular hours worked, and the number of overtime hours worked.

79. Defendants furnished Plaintiff no wage statement at all for the payments of December 28, 2023 and January 3, 2024, and the statements Defendants furnished thereafter omitted Plaintiff's rate of pay, his regular hourly rate, his overtime rate, and the number of regular and overtime hours he worked.

80. Defendants did not make complete and timely payment of all wages due to Plaintiff, and had no reasonable, good faith belief that they were not required to furnish Plaintiff with accurate wage statements. Defendants' failure to furnish accurate wage statements caused Plaintiff concrete financial injury by preventing him from verifying the rate and hours applied to his pay, calculating the amount of Defendants' underpayment, and making a timely and specific demand for the difference.

81. By reason of the foregoing, Plaintiff is entitled under New York Labor Law § 198(1-d) to recover statutory damages of $250.00 for each work day that the violation occurred or continued, up to $5,000.00 in the aggregate, together with costs and reasonable attorneys' fees.

## FIFTH CAUSE OF ACTION

(Failure to Provide Wage Notice at Hiring — New York Labor Law § 195(1); N.Y. Lab. Law § 198(1-b))

82. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

83. New York Labor Law § 195(1)(a) requires an employer to provide each employee, at the time of hiring, with a written notice in English and in the employee's primary language stating, among other things, the employee's rate or rates of pay and the basis thereof; the regular pay day designated by the employer; the name of the employer and any names under which it does business; the physical address of the employer's main office or principal place of business and a

mailing address if different; the employer's telephone number; and, for an employee who is not exempt from overtime compensation, the regular hourly rate and overtime rate of pay.

84. Upon information and belief, Defendants never provided Plaintiff with that notice, in English, in Spanish, or at all.

85. Defendants did not make complete and timely payment of all wages due to Plaintiff, and had no reasonable, good faith belief that they were not required to provide Plaintiff with the notice.

86. By reason of the foregoing, Plaintiff is entitled under New York Labor Law § 198(1-b) to recover statutory damages of $50.00 for each work day that the violation occurred or continued, up to $5,000.00 in the aggregate, together with costs and reasonable attorneys' fees.

## SIXTH CAUSE OF ACTION

(Breach of Contract Against the Corporate Defendant — Pleaded in the Alternative)

87. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

88. This cause of action is pleaded against the Corporate Defendant only, in the alternative to the Second Cause of Action, and only to the extent that any portion of the compensation Defendants agreed to pay Plaintiff is held not to constitute “wages” within the meaning of Article 6 of the New York Labor Law.

89. On or about November 16, 2023, Plaintiff and the Corporate Defendant entered into an agreement under which Plaintiff would work as a porter and the Corporate Defendant would pay Plaintiff $1,000.00 per week. The Corporate Defendant subsequently established and paid Plaintiff a gross wage of $3,750.00 per semi-monthly pay period for February 2024, which, to the extent it modified the original compensation terms, constituted the rate the Corporate Defendant agreed to pay.

90. Plaintiff performed his obligations under the agreement by working as a porter at Defendants’ premises and providing the services Defendants required of him.

91. The Corporate Defendant breached the agreement by failing to pay Plaintiff any compensation for approximately the first seven weeks of his employment until December 28, 2023 and January 3, 2024, and by paying Plaintiff less than the agreed amount from March 1, 2024 to the present.

92. As a direct result of the Corporate Defendant's breach, Plaintiff has been damaged in an amount to be determined at trial, together with prejudgment interest under CPLR §§ 5001 and 5004.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Fabio Enrique Diaz Garcia respectfully requests that this Court enter judgment in his favor and against Defendants Park Avenue Aesthetic & Rejuvenation Dentistry, P.C. and Dr. Gerald P. Curatola, D.D.S., jointly and severally (except as to the Sixth Cause of Action, which is asserted against the Corporate Defendant only), as follows:

a. Declaring that Defendants violated the minimum wage provisions of the Fair Labor Standards Act as to Plaintiff, and that the violation was willful;

b. Awarding Plaintiff, under 29 U.S.C. § 216(b), any minimum wages that remain unpaid and an additional equal amount as liquidated damages for the minimum wages Defendants failed to pay when due;

c. Awarding Plaintiff his unpaid wages, in an amount to be determined at trial, under New York Labor Law §§ 191 and 198;

d. Awarding Plaintiff liquidated damages for willful violations as provided by New York Labor Law § 198(1-a);

e. Awarding Plaintiff, for Defendants' failure to pay his wages weekly, the damages available under New York Labor Law § 198(1-a), including liquidated damages equal to one hundred percent of the wages Defendants failed to pay on a regular payday no less frequently than semi-monthly, and, as to wages paid late on a regular payday, up to one hundred percent of the lost interest due for the delayed payment;

f. Awarding Plaintiff statutory damages of $250.00 for each work day on which Defendants failed to furnish him an accurate wage statement, up to $5,000.00 in the aggregate, under New York Labor Law § 198(1-d);

g. Awarding Plaintiff statutory damages of $50.00 for each work day on which Defendants failed to provide him the notice required at hiring, up to $5,000.00 in the aggregate, under New York Labor Law § 198(1-b);

h. In the alternative, awarding Plaintiff damages for breach of contract against the Corporate Defendant in an amount to be determined at trial;

i. Awarding Plaintiff prejudgment interest under CPLR §§ 5001 and 5004;

j. Awarding Plaintiff post-judgment interest under 28 U.S.C. § 1961 and CPLR § 5003, and the automatic fifteen percent increase provided by New York Labor Law § 198(4) should any amount of the judgment remain unpaid upon the expiration of ninety days following its issuance, or ninety days after the expiration of the time to appeal if no appeal is then pending, whichever is later;

k. Awarding Plaintiff his reasonable attorneys' fees and the costs of this action under 29 U.S.C. § 216(b) and New York Labor Law §§ 198(1-a), 198(1-b), and 198(1-d); and

l. Granting such other and further relief as the Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
November 2, 2026

**STILLMAN LEGAL, P.C.**

By: /s/ Lina Stillman

*Lina Stillman, Esq*

Lina Stillman, Esq.
42 Broadway, 12th Floor
New York, New York 10004
Tel: (212) 832-1000
ls@stillmanlegalpc.com
Attorneys for Plaintiff